IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| JENNIFER BURKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 3:23-cv-846 |
| | ) | |
| VIRGINIA ALCOHOLIC BEVERAGE CONTROL AUTHORITY, | ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| MARK DUNHAM | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TRAVIS HILL, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AND JURY DEMAND

Jennifer Burke ("Burke"), by counsel, states the following as her Complaint against

Virginia Alcoholic Beverage Control Authority ("Virginia ABC"), Virginia ABC Chief Retail

Operations Officer Mark Dunham ("Dunham"), and former Virginia ABC Chief Executive

Officer Travis Hill ("Hill") (collectively, "Defendants"):

### NATURE OF THE ACTION

1. Plaintiff Jennifer Burke works as Director of Retail Operations for Virginia ABC, a state
   authority of the Commonwealth of Virginia.

2. In May, 2023, Virginia ABC placed Burke on administrative leave, where she remained until
   July, 2023. When she returned to her job, her job description had fundamentally changed.

1

3. Burke brings this lawsuit claiming that Virginia ABC violated her liberty interest and retaliated against her for exercising her right to free speech and being a whistle blower. Burke also claims that her supervisors at Virginia ABC defamed her when they spoke publicly about her around the time that she was placed on leave when her supervisors said that Burke had or would be terminated.

4. Burke's allegations stem from incidents beginning in February, 2022. As set forth in more detail below, Travis Hill, Virginia ABC's then- Chief Executive Officer, temporarily reassigned Burke to a special project cleaning up the disorganized but immense inventory of Virginia ABC's warehouse in preparation for its move to a new location. Burke and her team, which included, among others, Thomas Aruanno, worked tirelessly for months on this project.

5. Burke and her team discovered through their work that millions of dollars of inventory was missing from Virginia ABC's Hermitage Road warehouse and numerous improper payments had been made to third-party vendors. Burke also found mismanagement by her supervisor, Mark Dunham, Virginia ABC's Chief Retail Operations Office.

6. Burke reported to Hill and Dunham the millions of dollars of missing inventory, improper payments, and mismanagement, but instead of taking action Virginia ABC engaged in a cover-up.

7. In a meeting on April 6, 2023, Burke engaged in whistleblowing activity by reporting the facts Virginia ABC ignored to the Chairman of the Virginia Alcoholic Beverage Control Authority Board, Tim Hugo ("Hugo"), and to Governor Glenn Younkin's Chief Transformation Officer, Eric Moeller ("Moeller").

8. Hill and Dunham were aware of Burke's report to the Board and Governor's Office, and placed her on what was internally referred to among members of the C-Suite as the "hit list."

9. Less than a month later, Hill and Dunham, without lawful justification and with Burke's having done nothing wrong, placed Burke on administrative leave, publicly accused her of wrongdoing on a conference call with the entire retail leadership team and support team that reported to Burke, and threatened to terminate her.

10. Burke remained on administrative leave for several months, and when Virginia ABC called her back to work, it was to a reduced position with fewer direct reports, a narrowed set of responsibilities and diminished chances for advancement and professional development.

11. Dunham, Hill, and Virginia ABC's retaliatory actions have subjected Burke to a hostile work environment and have caused Burke severe damage to her reputation and emotional distress.

## JURISDICTION AND VENUE

12. This Court has federal subject matter jurisdiction over the federal claims in this action pursuant to 28 U.S.C. 1331.  It has pendent and supplemental jurisdiction over the state law claims in this case pursuant to 28 U.S.C. 1367.

13. Venue is proper in this district and division pursuant to 28 U.S.C. 1391, as this is the district and division where a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

14. Burke is, and at all times relevant to this Complaint was, a citizen of the Commonwealth of Virginia and resident of this judicial district.

15. The Virginia Alcoholic Control Beverage Control Authority is an authority of the Commonwealth of Virginia, which is different than a standard agency of the Commonwealth.

16. In 2018, Virginia ABC transitioned from a state agency of the Commonwealth to an authority. According to its own website, "[a]s a result of transitioning from a traditional government

3

agency to an authority, ABC is a hybrid business/public-sector entity which has greater flexibility in setting its own policies, specifically in the areas of human resources and procurement." https://www.abc.virginia.gov/about/agency-overview/authority-faqs (last accessed December 13, 2023).

17. Mark Dunham ("Dunham") is a citizen of the Commonwealth of Virginia and resides in this judicial district and division.

18. Travis Hill ("Hill") is a citizen of the Commonwealth of Virginia and resides in this judicial district and division.

19. Burke, Dunham, and Hill worked together primarily at Virginia ABC's corporate office, located at 7450 Freight Way, Mechanicsville, Virginia 23116, and in Virginia ABC's warehouse locations on Freight Way and Hermitage Road.

20. Each of the locations described above are places in this district and division and where a substantial part of the events and omissions giving rise to Burke's claims occurred.

### FACTUAL ALLEGATIONS

21. Burke worked as Director of Retail Operations for Virginia ABC from August, 2018 to the present.

22. At all relevant times, Dunham served as Virginia ABC's Chief Retail Operations Officer and was Burke's direct supervisor.

23. At all relevant times until his resignation in October, 2023, Hill served as Virginia ABC's Chief Executive Officer and supervised Burke.

24. Burke came to Virginia ABC with 25 plus years of retail experience and a leadership track record. Burke has a loyal following of extraordinarily talented retail professionals who now also work for Virginia ABC.

25. Burke was a valued member of Virginia ABC's Retail Operations Department.

26. She worked both in the corporate office and frequently traveled to retail stores in the field, at her discretion.

27. Burke had a significant amount of core responsibilities, including the following: direct and manage operations of retail operations business unit; manage retail operations through Assistant Directors; monitor stores profitability and makes recommendations to implement new methods of operating to be more efficient; analyze divisions metrics and KPIs for individual and cross divisional performance gaps and opportunity areas; ensure each Assistant Director is monitoring and adjusting controllable expenses inclusive of payroll; ensure that each Assistant Director is responsible for inventory throughout their respective areas and districts as it relates to security problems, shoplifting and banking procedures; manage and improve conversion rates through leveraging KPIs, improved replenishment process, marketing execution, managing markdowns, etc.; assess the division business goals, customer base, traffic patterns, and use the information to strengthen business; proactively identify opportunities to improve performance through regular business analysis, market visits and soliciting feedback from assistant directors, area, region/store team members and customers; serve on Real Estate committee; recommends modernization, relocation and new store sites; and direct store staffing program to ensure compliance so that stores are operated as economically as feasible without impacting customer service.

28. Burke had significant leadership responsibility. Burke was lead over her entire division. She had responsibility for overseeing 13 direct reports, 27 secondary reports, including 25 District Managers in charge of nearly 400 stores, accounting for nearly 4,000 Virginia ABC employees.

29. Burke was tasked with significant personnel team management responsibilities, including: lead, motivate, and direct team members in the retail operations process; effectively manage and develop team members through formal and informal training and cross-training, coaching, and counseling; direct all areas of employment, staffing, employee development and training; partner with all other divisions to assure the retail team remains informed as quickly as possible of all updates; assist Internal Audit and Enforcement on all criminal and administrative investigations; recommend actions to be taken under Standards of Conduct; and work with Human Resources to develop appropriate training programs.

30. Burke was a high performer at Virginia ABC. She received an evaluation of high contributor in 2021 and 2022 and has never received a negative performance review. She was acknowledged as Leader of the Year in 2021, and she received other accolades and awards at Virginia ABC based on her efforts, knowledge of retail operations and contributions to the organization.

***Hill assigns Burke to lead the warehouse investigation.***

31. In the fall of 2021, personnel in retail operations at Virginia ABC, including Burke, started observing issues with shipments coming from Virginia ABC's warehouses. Burke reviewed the inventory data available to her, which showed that Virginia ABC had inventory in the warehouse but it was not making it to the stores.

32. The problems continued to become worse, and in December 2021, Burke and Tracey Heilborn, Virginia ABC's Director of Logistics, offered to Dunham to assist with the warehouse issues, including developing a plan to assist by renting a fleet of trucks to make deliveries to stores. Burke and Heilborn additionally offered a plan to allow Virginia ABC's freight shipping

contractor to catch up on deliveries of trucks sitting in the yard to stores and the warehouse and to help train and manage the team completing the delivery projects to success.

33. Dunham refused.

34. Dunham then lashed out at Burke and Heilborn, yelling and cursing saying they did not "understand the big picture" and "needed to mind their own business."

35. Later that day, Dunham repeated this negative statement to a room full of Burke's colleagues at the Charlottesville, Virginia division.

36. Burke raised the warehouse issues with Hill, who on January 25, 2022, instructed Burke to begin looking at ways to stabilize operations in Virginia ABC's warehouses.

37. Burke then began to orient a team from Virginia ABC's retail operations to be part of a team to stabilize operations in the warehouses.

38. The team set up a plan for a week of turnover and then for Burke and the team to leave retail and take on new roles in the warehouses.

39. The team included the following individuals, who Burke intends to call as witnesses at trial:

    a. Tom Aruanno, ("Aruanno") one of Burke's two Assistant Directors at the time, acted as Burke's assistant in the warehouse and helped to reset and optimize the warehouse's data and systems such as for inventory control and shipping counts.

    b. Jennifer Leistra and Daniel Phillipsen, Virginia ABC District Managers, were assigned with a small team to inventory, clean, and arrange shipment of thousands of pallets of product from the Hermitage Road warehouse to stores, so that suppliers could be paid and customers had access to the inventory at retail stores.

    c. Chris Coffman and Ryan Stephens, Virginia ABC District Managers, were put in charge of inventory counts and corrections in the new warehouse on Freight Way. They are

expected to testify they found in the warehouse inventory of product that had been missing from shelves in retail stores they manage.

d.   Six others working in double capacity or at a higher level to cover and assist.

e.   Laura Sheehan, a Virginia ABC District Manager at the time, was in charge of training and morale of the workforce.  She is expected to testify to her first-hand knowledge of poor treatment of the warehouse team and total lack of organization and training.

f.   John Singleton, Virginia ABC's Director of Human Resources, helped with the planned turnover of some warehouse staff and with temporary re-assignment of duties for the team conducting the investigation. By email on January 27, 2022, Singleton confirmed that the team could begin the investigation. Burke was told by Dunham and Hill: "You're good to go. I've notified John."

***Over the next few months, Burke investigated Virginia ABC's warehouse by conducting interviews, reviewing documents and completing an in-depth inventory.***

40. Burke's team went into the warehouse on a six-week assignment.

41. After the team's initial assessment, it became clear six weeks was insufficient time.

42. The team began assessing and remediating individual issues created by the poor design or the warehouse and lack of skilled leadership.

43. Each Tuesday through Friday the team gave a scheduled daily update in Room 370, called the Old Dominion Room.

44. The extent of the work and remediation was substantial.

45. Essentially, the team completed the first exhaustive inventory of Virginia ABC's entire warehouse system in recent memory.

46. The team repaired warehouse operations, emptied the old warehouse on Hermitage Road, managed to get all stores back in stock, and helped repair staffing and morale in the warehouses.

47. The team found numerous specific areas of inefficiency during their re-assignment, including:

   a. The ordering system was being manipulated by Dunham's team to reduce shipments of the best-selling items;

   b. The new warehouse was not set up with enough pickable locations to ship all items available to stores;

   c. The dispenser was not set up with the correct items to get maximum output as it should have been set up for top 20 stock keeping units, not 50, allowing it to operate at maximum efficiency;

   d. There was no ability to monitor daily production in the warehouse, as no reporting had been set up even though the IT platform had this capability;

   e. Logistics made it impractical to move inventory from the old warehouse to the new warehouse, so both warehouses needed to be set up for direct to store deliveries; and

   f. Warehouse employees were not properly trained.

48. By the end, it took the team nearly seven months to complete the investigation and report.

***Burke's team identifies millions of dollars of missing inventory and improper payments to Virginia ABC's third-party vendors.***

49. At a daily update on June 29, 2022, the team shared a data set showing initial findings of one year shrink totaling more than $2.7 million.

50. Additional investigation by the team confirmed the initial findings.

51. Further investigation revealed even more financial irregularities, such as a labor vendor that had been paid double the amount due resulting in nearly a million dollars over 48 months.

*Hill and Dunham engage in a cover-up of the losses.*

52. Hill did not attend the June 29, 2022 daily update. Burke wanted to provide him a written summary, and she emailed it to Dunham as a draft at 5:38 pm that evening. Dunham had attended the daily update and heard about the investigation's findings, missing inventory, and financial losses. Dunham appeared clearly disgruntled regarding Burke's report.

53. Dunham instructed Burke and Aruanno to "hold off" on sharing the numbers and raising the issue in a large meeting. Burke and Aruanno complied with their superior's instruction.

54. The next week, in a one-on-one meeting with Dunham, Burke informed him that while she wanted to give him time to prepare leadership for news of the losses, soon she would have to disclose to leadership the investigation's findings.

55. However, Dunham made no report to leadership of the investigation's findings and no action was taken by Dunham or Virginia ABC to address the findings.

56. Accordingly, Burke and Aruanno felt like they had no choice but to report the information to others within Virginia ABC. As there was no Chief Administrative Officer at the time with whom they could share the information, Burke and Aruanno reported the investigation's finding to Doug Robinson ("Robinson"), Virginia ABC's Director of Finance.

57. Robinson confirmed that Dunham had provided him with large write-offs and asked that they be recorded in Virginia ABC's accounting system.

58. Robinson also confirmed that Dunham had provided him an extensive list of "forward buy" items and "one time buy" items, which are ways that Dunham attempted to hide losses.

59. Robinson said that he had informed Hill of the large write-offs.

60. Indeed, Hill later admitted he knew about the write-offs. During a meeting where the termination of Burke and Aruanno was discussed, the more than $2 million of losses was

discussed. Hill stated to Dunham, during a conversation that upon information and belief is recorded, "I thought we wrote that off."

61. As of December, 2022, none of the investigation's findings had been reported to Virginia ABC's Board of Directors or made public.

62. At that time, Virginia ABC had recently hired a new Chief Administrative Officer, Dave Alfano, who had oversight of finance, HR, and procurement. Alfano had been involved in audits for Virginia ABC, and Burke believed he had a compliance responsibility. Burke was hopeful that Alfano would assist in ensuring Virginia ABC's Board would receive a report of the investigation's findings. Alfano ignored the investigation's findings.

63. Before and during the investigation and cover-up, Virginia ABC regularly reported to the Commonwealth and the public that its inventory was financially accurate and relatively in line with its goals.

64. Virginia ABC's reports regarding its inventory were knowingly and recklessly false, because of Hill and Dunham's concealment.

***Burke reports to Virginia ABC's Board of Directors and Governor Glenn Younkin's administration the millions of dollars of missing inventory, improper payments to Virginia ABC's third-party vendors, and Hill and Dunham's mismanagement and cover-up***

65. In January 2023, Burke disclosed to Maria Everett, then- Chairwoman of the Virginia ABC Board, regarding the investigation's findings. To Burke's knowledge, she did nothing.

66. In February 2023, Virginia ABC announced a new Chairman of the Board, Tim Hugo.

67. Burke reported to Hugo the investigation's findings. Burke and Hugo began discussions in March, 2023, and added additional directors to the discussion in April, 2023.

68. In a meeting on April 6, 2023, Burke reported the investigation's findings, with Hugo present, to Governor Glenn Younkin's Chief Transformation Officer, Eric Moeller.

69. On April 6, 2023, numerous Virginia ABC Directors met with Hugo and Moeller to voice concerns regarding their respective divisions.

70. Hill and Dunham were aware of Burke's discussions and meetings with Hugo. Among other information, they received reports from Hill's assistant who sat outside of the meeting room at Virginia ABC, timed the length of time of the meeting, and reported back to Hill which Directors spent the most time making reports to Hugo and Moeller.

71. Burke also reported the issue by email to Governor Younkin and Moeller, copying Hugo.

***Hill and Dunham begin retaliating against Burke.***

72. On or about April 2023, Hill stated in a meeting of Virginia ABC's C-suite that Burke, Aruanno, and others who reported wrongdoing at Virginia ABC to Hugo and Moeller were on a "hit list," "were not to be trusted" and were "not acting in the best interest of the authority."

73. For two months in March and April, 2023, Burke was bullied, yelled at, made fun of by Virginia ABC's management, including Hill and Dunham.

74. Alfano also participated in the disparagement, calling Burke unprofessional to a group of directors.

75. Burke's son, Trey Burke, had applied for and received a job with Virginia ABC starting on April 25, 2023. At 6 pm the evening before he was to start, Dunham called Burke to inform her that Trey Burke would no longer be starting work at Virginia ABC. At the exact same time, Singleton called Trey to tell him he would not start the next day. This caused Burke's son lost job opportunities, and he had to take a job elsewhere with a significantly lower salary.

76. On May 4, 2023, Virginia ABC placed Burke on administrative leave and threatened her with discipline and termination for an issue which occurred while she was reassigned to the warehouse.

77. On May 4, 2023, Dunham hosted a call with 25 District Managers and 1 Area Manager, as well as 12 support staff members. He announced on the call that Burke and three other employees in retail have been placed on leave "as we must be held to our values of integrity and accountability."

78. On May 15, 2023, Dunham visited the Goochland Virginia ABC retail store, which is by his home, and informed Manager Willette Ryan that Burke had been "fired" because of a "lack of values."

79. Burke believes that Dunham's actions were also informed by his negative perception of her.

80. Dunham expressed his negative perception of Burke in a January 2022 incident where Dunham confronted Burke about statements Burke had made regarding a former employee that was Dunham's equal co-worker and friend. Burke and her husband were discussing sexual harassment of Burke in the workplace by the former employee. One of Burke's direct reports overheard the discussion and reported it to HR. Dunham became defensive on behalf of the former employee instead of taking action regarding the report of sexual harassment.

81. Dunham would constantly make negative statements to Burke, such as "you are responsible for every single mistake in retail every store every day every minute."

82. Dunham also invaded upon Burke's leave time. On Presidents' Day, a Virginia ABC holiday, Burke was in the hospital with her son, and Dunham called her. Burke informed Dunham she could not talk, he said they "had some business to discuss," and instructed Burke for 34 minutes about how Burke would be held accountable for a broken bottle in retail going forward and to watch every step she made.

***Virginia ABC fundamentally altered Burke's position.***

83. Virginia ABC instructed Burke to return to work on July 5, 2023.

84. At 9:00 am that day, Burke was called into a meeting with Dunham, a former secondary report District Manager, and one of Burke's former direct reports. Together, they explained to Burke her new position and duties.

85. Burke's number of direct reports was reduced from 13 to 2.

86. Burke was informed they were recruiting for a third direct report but that Burke was not the hiring manager and that Dunham would make all decisions on hiring, promotions, and other issues in retail going forward.

87. Dunham also assigned his new direct reports to Burke's division to work closely with her. Dunham instructed his reports working with Burke to check with Dunham before they did anything Burke asked of them in an attempt to put Burke's work under a microscope to establish some kind of wrongdoing or breach of policy on her part.

88. Burke lost her discretion to decide to travel to Virginia ABC retail stores. Now all trips required Dunham's approval. In addition, any office days now required Dunham's approval.

89. Dunham decreased the budget related to Burke's area of responsibility. The impact of the decrease was significant, especially because Burke already ran a lean retail labor model and Burke's budget was responsible for substantial unbudgeted items.

90. Burke's core responsibilities were reduced to only: two office days for planning, issue resolution, project work, and KPI review; three days in the field visiting stores, district managers, area managers, licensees, community leaders, and local police departments; gather and act on feedback to improve relationships, engagement, and process improvement efficiencies; Schedule time each day to review and respond to emails; set "out of office" reply on days when in field to set expectations with recipients that she had limited access to respond;

weekly one-on-one with Dunham to review past week's activities, project updates, and future activities; schedule ad hoc one-on-ones as necessary.

91. Burke's access to information necessary to perform her job function was limited. In an unprecedented move, Dunham gave Burke a brand-new user profile so she could not access any of her prior working files. This also created access and technical issues. A member of the PST team informed Burke this was not the normal practice and that it was not advisable from an IT perspective, but that they had been specifically instructed to create the new profile as well as restrict access to all historical files.  Aruanno was similarly restricted. Dunham imposed a new requirement that Burke obtain written approval from him and Singleton for Burke to access files.

92. Burke had so many issues with her prior phone because of the profile change that she ultimately had to purchase a new phone at her own expense to be able to do her job while traveling as required.

93. Many other changes to Burke's job have occurred, involving less responsibility and more oversight, such as Burke no longer being allowed to make any changes to standard operating procedures without written approval from Dunham, Singleton, and Internal Audit.

***Virginia ABC's stated reason for placing Burke on administrative leave, threatening discipline against her, and threatening termination of her is false, as Burke did nothing wrong.***

94. In early 2022, employees in Virginia ABC Store #289 were exploiting "suspends" transactions in a fraudulent manner which allowed them to bypass existing Exception Based reporting in retail operations.

95. The result of this loophole in the system was that employees could steal from Virginia ABC without the system noting any error.

15

96. In March, 2023, Burke was called into a meeting with Alfano and Singleton. Burke was not given any information about the subject of the meeting. In the meeting, Alfano and Singleton questioned Burke's knowledge of the "suspends" fraud.

97. Burke demonstrated that she had no knowledge of the "suspends" fraud by offering the only email she previously received about any fraud while she was re-assigned to the warehouse, which was about a "voids" fraud matter.

98. Alfano and Singleton stated that they had the pertinent email and ended their questions. At that time, Burke reported retaliation she was experiencing from Dunham, including yelling, micromanagement, and other retaliation as a result of her whistleblowing.

99. Alfano and Singleton dismissed Burke's complaints as not the subject of the meeting, and that they would discuss them with her another time.

100. Alfano and Singleton did not discuss Dunham's retaliation against Burke with her at another time.

101. Despite Burke's demonstration that she did not have knowledge of any "suspends" fraud while she was re-assigned to the warehouse, and not working at the time as the Director of Retail Operations, Virginia ABC nonetheless placed Burke on administrative leave in May 2023 as a scapegoat for the "suspends" fraud.

102. When Virginia ABC placed Burke on administrative leave, it did so in tandem with giving Burke (and others) a Notice of Pending Disciplinary Action ("NOPDA").

103. Additionally, Burke was instructed not to speak with any Virginia ABC employee while on leave.

104. On information and belief, Virginia ABC does not maintain a discipline policy or a progressive discipline policy like that of Commonwealth agencies. Additionally, as an

authority, Virginia ABC employees no longer have access to the standard Commonwealth of Virginia grievance procedure like they did before Virginia ABC became an authority.

105.    The NOPDA Burke received did not identify which policies Burke violated and did not identify any dates of violation.

106.    The NOPDA only vaguely stated that Burke was responsible for the employees exploiting suspends transactions.

107.    This make no sense, because the events occurred when Burke was on assignment investigating the warehouses as described above. She had no responsibility for retail operations during that time.

108.    Additionally, the passing knowledge Burke did receive back in 2022 regarding a "voids" system loophole led her to make sure that all proper investigations were being performed by that the appropriate authorities: Internal Audit, Investigations, and HR knew about the fraud and were investigating. In short, the issue was in the right hands.

109.    On information and belief, the entire C-Suite and Board was briefed in two separate board meetings about the system loophole being exploited (August of 2022 and October of 2022). Additionally, the former Internal Audit Director prepared an executive order that should have been, and likely was, sent to Hill and Dunham, who did not take action.

110.    Burke had no knowledge of the suspends fraud described in the NOPDA prior to February 8, 2023.

111.    However, when Burke learned that there was suspends fraud occurring, she launched a full and complete investigation.

112.    Others at Virginia ABC who had knowledge of the suspends fraud who are not whistleblowers have not been similarly threatened with discipline and retaliated against as Burke has been.

***Burke continues to experience retaliation.***

113.    While Burke was on administrative leave, Virginia ABC gave most current employees their annual evaluations and raises in anticipation of the Commonwealth's new fiscal year beginning July 1, 2023.

114.    When Burke was ordered back to work on July 5, 2023, she did not receive her evaluation or any raise, despite her prior stellar evaluation record and hard work.

115.    Burke requested her evaluation from Dunham continuously, with Dunham often responding that he would have to deliver Burke's evaluation to her the next week. He would make the same statement the next week.

116.    Not until October, 2023 (four months after other employees) did Dunham finally give Burke an evaluation.

117.    Dunham only gave Burke the state-mandated raise for Commonwealth employees (5%). She was denied the merit raise to which she was entitled given her work on the warehouse.

118.    On July 5, 2023, when Burke returned, as ordered, to Virginia ABC Headquarters from administrative leave, Dunham told Burke her "first priority" was development of a new attendance policy for Virginia ABC employees.

119.    Burke held her first meeting on the policy the morning of July 13, 2023.

120.    During that meeting, which on information and belief was recorded, John Singleton and his assistant director, Candace Frost, indicated that even if an employee missed work with a doctor's note, they should receive a point against their attendance record.

121.    Burke disagreed with this position, because employees properly documenting a need for

sick or medical leave should not be penalized, but the draft policy included what the Director

of Human Resources indicated should be included, because she feared Singleton would

threaten discipline or an investigation against her if she did not, as he routinely did since her

initial whistleblowing.

122.    It became clear that this was an attempt by Singleton to get Burke in trouble whether she

included the penalty in the attendance policy or not.

123.    Burke continued to work on the draft policy with her policy team. By September, 2023, the

full draft policy was sent to HR and Virginia ABC's legal department.

124.    Not until November, 2023 (during the holiday season and Virginia ABC's busiest time of

year for retail) did Human Resources take action on the policy.

125.    At that time, Burke was blamed for the lack of speedy approval of the policy and blamed

for the penalty for missing work with a doctor's note.

126.    Burke had to reach out to the interim CEO, Tom Kirby, for help resolving the matter, since

she did not suggest the inclusion of the penalty and is not in charge of Human Resources

policies.

127.    Mark Dunham called a meeting later that day, and Singleton and Frost attempted to blame

Burke for the delay. Burke stated "according to my meeting minute recordings [the penalty for

taking leave with a doctor's note] was not my idea and was recommended by HR."

128.    Dave Alfano then pushed back, questioning who would have done such a thing. Burke

stated that she would share the recording of the meeting if requested. Singleton became visibly

angry. After the meeting, Singleton told Alfano, "I need to speak with you."

129.    Alfano never requested the recording, though it was eventually agreed that the attendance policy would be approved as written, minus the penalty.

130.    On information and belief, Alfano made a statement to others in the C-Suite to the effect of dropping the penalty was "fine," because if "stores close, we miss sales, and we blame Jenn, that gets rid of her."

131.    Also on information and belief, just prior to Hill's resignation as Virginia ABC's CEO, Dunham made a statement to the effect that he would not be disciplined or terminated, because he has "too much on Travis [Hill]."

132.    Following Hill's resignation, on information and belief, Dunham further made a statement to the effect that "I have enough on others at the Authority" to avoid being disciplined or terminated.

133.    Burke currently works in a hostile work environment at Virginia ABC, is micromanaged, threatened with false investigations and potential discipline by HR, has had her promotion potential cut off, her reputation tarnished significantly, and her earning potential limited.

134.    As a result of these events, Burke experienced severe mental anguish including panic attacks, hives, night terrors and diagnosed severe depression.

### COUNT I
### RETALIATION
### VIRGINIA FRAUD AND ABUSE WHISTLE BLOWER PROTECTION ACT
### VA. CODE § 2.2-3011

135.    Plaintiff incorporates by reference and realleges each allegation set forth above.

136.    In Count I, Burke claims that Virginia ABC, Hill, and Dunham wrongfully discriminated and retaliated against her, including threats of discipline and termination, as a result of her whistleblowing, causing her to suffer the adverse employment action of reduced employment position and emotional distress, in violation of Virginia Code § 2.2-3011.

137.    That statute states that "no employer may discharge, threaten, or otherwise discriminate or retaliate against a whistle blower whether acting on his own or through a person acting on his behalf or under his direction" and allows for plaintiffs to bring a civil action against their employer to remedy a violation. Va. Code § 2.2-3011.

138.    Burke acted in good faith as a whistleblower by disclosing the results of her investigation and the cover-up, including in a meeting on April 6, 2023, to the Chairman of the Virginia Alcoholic Beverage Control Authority Board, Tim Hugo, and to Governor Glenn Younkin's Chief Transformation Officer, Eric Moeller, and by email to Governor Younkin, Moeller, and Hugo.

139.    Soon after Burke took these actions, Dunham and Hill wrongfully discriminated against Burke by retailing against her because she acted as a whistle blower.

140.    These actions create a reasonable inference that Dunham and Hill, and others at their instruction, wrongfully discriminated against Burke by retailing against her because she acted as a whistle blower.

141.    Dunham and Hill were at all relevant times on notice that Burke is a whistle blower protected by Chapter 30.1 of the Code of Virginia.

142.    In retaliation for Burke's whistle blowing, Dunham and Hill reduced Burke's position reduced position so she had fewer direct reports, a narrowed set of responsibilities and diminished chances for advancement and professional development.

143.    In retaliation for Burke's whistle blowing, Dunham, Hill and Singleton changed Burke's job responsibilities and made her work environment so intolerable that it amounted to a hostile work environment and an adverse employment action.

144.    Dunham, Hill, and Virginia ABC's actions are in violation of Virginia Code § 2.2-3011.

145.   Dunham, Hill, and Virginia ABC's actions described in this Count have proximately caused Burke damages.

146.   Burke has suffered substantial severe mental and emotional distress, reputational harm, loss of sleep, humiliation, embarrassment and loss of time.

147.   Burke suffered financial loss when she did not accumulate PTO over the 8 weeks that she was suspended without justification.

148.   Burk suffered financial loss when she was delayed 4 months past the effective date to receive an annual review and mandated pay increase. When she did receive the standard pay increase of 5%, she was denied any raise to which she would have otherwise been entitled given her herculean efforts with the warehouse.

149.   Burke has suffered lost future wages, because of the damage to her reputation and the diminished chances for advancement and professional development.

150.   Dunham and Hill acted intentionally, willfully, recklessly and maliciously against Burke and with utter and conscious disregard of her rights.

151.   Virginia ABC is liable for Dunham and Hill's actions as their and Burke's employer.

152.   Virginia ABC took no action to stop Dunham or Hill.

### COUNT II
### DEFAMATION

153.   Plaintiff incorporates by reference and realleges each allegation set forth above.

154.   Hill and Dunham published their statements about Burke described above.

155.   Hill and Dunham's statements about Burke described above were false.

156.   Hill and Dunham's statements about Burke described above were defamatory, both directly and by inference, implication and insinuation.

157.   The statements are and purport to be statements of fact and not opinion.

158.    Hill and Dunham intended to defame Burke.

159.    Hill and Dunham intended that the people to whom they made the statements about Burke described above believe them and have a lesser opinion of Burke because of them.

160.    Hill and Dunham's statements were motivated by self-preservation and protecting their own images and jobs, rather than expressing a sincere belief about Burke.

161.    Hill and Dunham's statements were meant to impute Burke's unfitness to perform the duties of her employment, or want of integrity in the discharge of such duties.

162.    Hill and Dunham's statements were meant to prejudice Burke in her profession or trade.

163.    Dunham, Hill, and Virginia ABC's actions are in violation of Virginia law.

164.    The statements constitute defamation per se.

165.    Virginia ABC is liable for Dunham and Hill's actions as their and Burke's employer.

166.    Virginia ABC took no action to stop Dunham or Hill.

167.    No privileges, qualified or absolute, attach to the statements.

168.    Dunham, Hill and Virginia ABC's actions described in this Count have proximately caused Burke damages.

169.    Burke's position has been reduced so she had fewer direct reports, a narrowed set of responsibilities and diminished chances for advancement and professional development.

170.    Burke's work environment is so intolerable that it amounts to a hostile work environment.

171.    Burke has suffered substantial severe mental and emotional distress, reputational harm, loss of sleep, humiliation, embarrassment, and loss of time.

172.    Burke has suffered lost future wages, because of the damage to her reputation and the diminished chances for advancement and professional development.

173.    Dunham and Hill acted intentionally, willfully, recklessly, and maliciously against Burke and with utter and conscious disregard of her rights.

## COUNT III
### RETALIATION
### FIRST AMENDMENT

174.    Plaintiff incorporates by reference and realleges each allegation set forth above.

175.    When on April 6, 2023, Burke reported the investigation's findings and cover-up to the Chairman of the Virginia Alcoholic Beverage Control Authority Board, Tim Hugo, and to Governor Glenn Younkin's Chief Transformation Officer, Eric Moeller, Burke was exercising her Constitutional right to free speech and was engaging in protected speech.

176.    Burke was likewise exercising her Constitutional right to free speech and was engaging in protected speech when she emailed Governor Younkin, Moeller, and Hugo to report the investigation's findings and cover-up.

177.    By their actions described above, Hill and Dunham retaliated against Burke for exercising her right to free speech.

178.    Burke was speaking on a matter of public concern rather than about a matter of personal interest.

179.    Burke's interest in speaking upon the matter of public concern outweighed the government's interest in managing the working environment.

180.    Her speech was a substantial factor in the retaliation.

181.    Burke released information to the Virginia ABC Board of Directors and to the Governor's Office because she was worried about being silenced or that the investigation would be covered up and that fraud, waste, and abuse of taxpayer dollars was occurring.

182.   Virginia ABC's mismanagement of the warehouse inventory and cover-up is a matter of public concern.

183.   The story has been the subject of media coverage. See, e.g. https://www.axios.com/local/richmond/2023/06/09/abc-virginia-embezzlement (last accessed Dec. 13, 2023); https://www.virginiamercury.com/2023/06/27/virginia-abc-inventory-losses-less-certain-than-authority-indicated/ (last accessed Dec. 13, 2023).

184.   The release of the information would not have undermined the mission of Virginia ABC or its interests in confidentiality or administration.

185.   Rather, the release of the information was in the government's interests.

186.   Burke did not release the information to any former government official.

187.   Burke has a constitutional right to speak to the Governor's Office about government misconduct.

188.   Dunham, Hill and Virginia ABC's actions are in violation of the United States Constitution.

189.   Virginia ABC is liable for Dunham and Hill's actions as their and Burke's employer.

190.   Virginia ABC took no action to stop Dunham or Hill.

191.   Dunham, Hill and Virginia ABC's actions described in this Count have proximately caused Burke damages.

192.   Burke's position has been reduced so she had fewer direct reports, a narrowed set of responsibilities and diminished chances for advancement and professional development.

193.   Burke's work environment is so intolerable that it amounts to a hostile work environment.

194.   Burke has suffered substantial severe mental and emotional distress, reputational harm, loss of sleep, humiliation, embarrassment, and loss of time.

195.    Burke has suffered lost future wages, because of the damage to her reputation and the diminished chances for advancement and professional development.

196.    Dunham and Hill acted intentionally, willfully, recklessly, and maliciously against Burke and with utter and conscious disregard of her rights.

### COUNT IV
### DUE PROCESS VIOLATION
### 42 U.S.C. § 1983

197.    Plaintiff incorporates by reference and realleges each allegation set forth above.

198.    Virginia ABC is a public employer.

199.    When on April 6, 2023, Burke reported the investigation's findings and cover-up to the Chairman of the Virginia Alcoholic Beverage Control Authority Board, Tim Hugo, and to Governor Glenn Younkin's Chief Transformation Officer, Eric Moeller, Burke was engaging in protected speech under 42 U.S.C. § 1983.

200.    Burke was likewise engaging in protected speech under 42 U.S.C. § 1983 when she emailed Governor Younkin, Moeller, and Hugo to report the investigation's findings and cover-up.

201.    At the time Dunham and Hill made the statements about Burke described above, she had a clearly established constitutional right to a liberty interest and freedom to get a new job and the right to engage in protected speech under 42 U.S.C. § 1983.

202.    At the time Dunham and Hill made the statements about Burke described above, they knew Burke had such rights and that their statements would violate Burke's rights.

203.    Dunham and Hill's statements about Burke described above are an arbitrary restriction on her liberty interest and freedom to get a new job, be promoted, or perform her pre- July, 2023 role.

204.    Dunham and Hill's statements described above, especially Hill's statement that Burke and others were on a "hit list," "were not to be trusted," and were "not acting in the best interest of the authority," and Dunham's statement that Burke and three other employees in retail have been placed on leave "as we must be held to our values of integrity and accountability," placed a stigma on Burke.

205.    The statements were and are false.

206.    The stigma implied a serious character defect in Burke involving her honesty and morality.

207.    The statements were beyond mere incompetence.

208.    The statements were made without due process to Burke.

209.    Burke did not know the statements would be made before Dunham and Hill made them.

210.    Dunham, Hill, and Virginia ABC's actions are in violation of the 42 U.S.C. § 1983.

211.    Virginia ABC is liable for Dunham and Hill's actions as their and Burke's employer.

212.    Virginia ABC took no action to stop Dunham or Hill.

213.    Dunham, Hill, and Virginia ABC's actions described in this Count have proximately caused Burke damages.

214.    Burke's position has been reduced so she had fewer direct reports, a narrowed set of responsibilities and diminished chances for advancement and professional development.

215.    Burke's work environment is so intolerable that it amounts to a hostile work environment.

216.    Burke has suffered substantial severe mental and emotional distress, reputational harm, loss of sleep, humiliation, embarrassment and loss of time.

217.    Burke has suffered lost future wages, because of the damage to her reputation and the diminished chances for advancement and professional development.

218.    Dunham and Hill acted intentionally, willfully, recklessly and maliciously against Burke and with utter and conscious disregard of her rights.

### PRAYER FOR RELIEF

WHEREFORE, Burke respectfully requests that this Court enter judgment in her favor against Defendants and order the following relief as allowed by law: compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, loss of enjoyment of life and damaged reputation; front pay and benefits related to her diminished position and narrowed set of responsibilities and diminished chances for advancement and professional development; lost wages; punitive damages (against Hill and Dunham not to exceed $350,000, the exact amount to be determined at trial); pre- and post-judgment interest at the highest lawful rate; attorney's fees; reasonable expenses; expert witness fees; costs; liquidated damages; and such further relief as this Court deems just and proper, including but not limited to (1) enjoining Virginia ABC, Dunham, and Hill from engaging in retaliation and (2) ordering that Virginia ABC and Dunham engage in training and provide training to their employees regarding whistleblower protections. Burke is entitled to damages in an amount not to exceed $1,000,000.

### JURY TRIAL DEMAND

Burke requests a trial by jury on all triable issues.

Respectfully submitted this 13th day of December, 2023.

/s/ *Sarah Robb*
_____
Sarah Flynn Robb, Esq. (VSB No. 76734)
Sarah Robb Law
919 East Main Street, Suite 1000
Richmond, Virginia 23227
Telephone: (804) 482-1536
Facsimile: (804) 988-5464
sarah@sarahrobblaw.com
*Attorney for Plaintiff Jennifer Burke*